**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **LELA M. McNAIR,** | § | |
| | § | |
| **Plaintiff** | § | |
| | § | |
| **v.** | § | **Civil Action No. 3:05-CV-1889-B (BH)** |
| | § | |
| **COMMISSIONER OF SOCIAL** | § | |
| **SECURITY ADMINISTRATION,** | § | |
| | § | |
| **Defendant.** | § | **Referred Motion** |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to the provisions of Title 28, United States Code, § 636(b)(1)(B), and the District Court's *Order of Reference*, filed September 27, 2005, this matter has been referred to the undersigned United States Magistrate Judge for report and recommendation. Before the Court are *Plaintiff's Motion for Summary Judgment*, filed May 30, 2006; *Commissioner's Motion for Summary Judgment*, filed July 24, 2006; and *Plaintiff's Reply Brief*, filed September 12, 2006. Having reviewed the evidence of the parties in connection with the pleadings, the Court recommends that *Plaintiff's Motion for Summary Judgment* be **GRANTED** and that *Commissioner's Motion for Summary Judgment* be **DENIED**. The Court recommends that the *Commissioner's Motion for Summary Judgment* be **REVERSED** and the case be **REMANDED** for reconsideration of Plaintiff's claim for Disability Insurance Benefits. The Court recommends that the *Commissioner's Motion for Summary Judgment* be **AFFIRMED** on Plaintiff's claim for Supplemental Security Income.

# I. BACKGROUND[1]

## A. Procedural History

Lela M. McNair ("Plaintiff") seeks judicial review of a final decision by the Commissioner of Social Security ("Commissioner") denying her claim for Disability Insurance Benefits under Title II and for Supplemental Security Income under Title XVI of the Social Security Act. On March 12, 2003, Plaintiff made an oral inquiry for disability insurance benefits and supplemental security income; her application for both was submitted on April 10, 2003. (Tr. at 103-06, 506-08.) Plaintiff claimed she was disabled due to chronic pain from degenerative bone disease, a dislocated disc, a hearing problem, seizures, and heart valve disease. (Tr. at 112). Notes from the Commissioner also indicate that Plaintiff alleged disability due to a severed nerve and severe anxiety. (Tr. at 103, 506). Plaintiff's application was denied initially and upon reconsideration. (Tr. at 58, 69). Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. at 73). A hearing, at which Plaintiff personally appeared and testified, was held on January 25, 2005. (Tr. at 26-55). On April 21, 2005, the ALJ issued his decision finding Plaintiff not disabled. (Tr. at 10-24.) The Appeals Council denied Plaintiff's request for review, concluding that the contentions raised in Plaintiff's request for review did not provide a basis for changing the ALJ's decision. (Tr. at 5-8). Thus, the ALJ's decision became the final decision of the Commissioner. (Tr. at 5). Plaintiff timely appealed the Commissioner's decision to the United States District Court pursuant to 42 U.S.C. § 405(g) on September 23, 2005.

---

[1] The following background comes from the transcript of the administrative proceedings, which is designated as "Tr."

## B. Factual History

### 1. Age, Education, and Work Experience

Plaintiff was born on September 26, 1948. (Tr. at 104). At the time of the hearing before the ALJ, she was 56 years old. (Tr. at 30). She completed the 10th grade and possesses a high school equivalency degree (GED). *Id.* Her past relevant work experience includes self-employment operating a gift and antique store. (Tr. at 52, 113). Plaintiff last worked in August 1996. (Tr. at 113).

### 2. Medical Evidence

Plaintiff has a complex and voluminous medical history. She suffers from chronic pain and has been under the care of Dr. Jose Newman, M.D., since at least November 28, 1994. (*See* Tr. at 193). She saw Dr. Newman more than 200 times in the next eight and a half years; however, his treatment notes never give a specific diagnosis of Plaintiff's ailments. (*See* Tr. at 157-193).[2] Instead, each entry by Dr. Newman prescribed or refilled a prescription medication. (*See* Tr. at 157-193). Dr. Newman occasionally refused to refill Plaintiff's prescriptions, (*see e.g.* Tr. at 172, 173, 188), and on June 6, 1998, he noted that Plaintiff was "quite happy" when he told her that the cough syrup he prescribed had codeine in it. (Tr. at 175). Over the course of several years, Plaintiff became addicted to various prescription medications.[3] (Pl. Br. at 4; *see* Tr. at 283-86, 325, 492-505).

Two other medical records provide more insight into Plaintiff's specific symptoms of chronic

---

[2]Dr. Newman sometimes noted a specific complaint such as an abscessed tooth or a headache; he also noted that Plaintiff received a steroid injection in one of her hips. (*See e.g.*, Tr. at 182, 190-92).

[3]In early 1999, Plaintiff listed several addictive prescription medications as part of her daily drug regimen. These included: Lortab, an opioid analgesic; Soma, a muscle relaxant; lorazepam, a benzodiazepine sedative; and Stadol NS nasal spray, a narcotic analgesic. (Tr. at 283, 286; Pl. Br. at 4). In 2001 and 2003, her medical records reflect that she also took Oxycontin and Dilaudid (two opioid analgesics) and Halcion and Xanax (two benzoidiazepine sedatives). (Tr. at 208, 323; Pl. Br. at 4).

pain.  The first record dates from August 6, 1996, when Plaintiff was admitted to the emergency

room at Methodist Hospital of Dallas after suffering a seizure at home.  (Tr. at 385).  Dr. Thomas

Mitchell, M.D., noted that Plaintiff had a history of chronic back and leg pain for which she received

treatment at a pain management clinic in Dallas.  *Id.*  Dr. Mitchell determined that Plaintiff's

seizures were of unknown etiology, but he suspected that the seizures were related to the abrupt

discontinuation of her pain management drug regimen one week prior to her admission at Methodist.

(Tr. at 385, 390).  Plaintiff told Dr. Mitchell that her pain management specialist ordered her to

discontinue her medication, but the treatment notes from Dr. Newman during the month prior to her

admission do not include such an order.  (Tr. at 385; *see* Tr. at 183-84).  When Dr. Mitchell

discharged Plaintiff on August 9, 1996, he diagnosed Plaintiff with: (1) seizures - probable

medication withdrawal; (2) chronic low back pain; (3) lumbar disc syndrome; (4) migraine

syndrome; and (5) rhabdomyolysis[4] due to seizures, resolved.  (Tr. at 385).

The second record is dated February 5, 1999.  (Tr. at 283-292).  Dr. Mitchell referred

Plaintiff to the practice of Dr. Richard Vera, M.D., on a complaint of pain in the back and legs.  (Tr.

at 292).  Dr. Vera's consultation notes state that Plaintiff has a "history of chronic intractable pain

for many years...[she] has chronic migraine headaches, low back pain, neck pain, and herniated

nucleus pulposus."[5]  (Tr. at 283).  Dr. Vera noted that Plaintiff "has been seen by several physicians,

including pain management physicians, and has been through various pain management programs."

---

[4]Rhabdomyolysis is the destruction or degeneration of skeletal muscle tissue that is accompanied by the release of muscle cell contents into the bloodstream.  MEDLINE PLUS: MEDICAL DICTIONARY, *available at* http://www.nlm.nih.gov/medlineplus/mplusdictionary.html (last visited Sept. 7, 2007).

[5]Herniated nucleus pulposus, also called a herniated disc, occurs when a disc that cushions the vertebrae slips out of place.  *Herniated Disk*, MEDLINE PLUS: MEDICAL DICTIONARY, *available at* http://www.nlm.nih.gov/medlineplus/mplusdictionary.html (last visited Sept. 10, 2007).

*Id.* Dr. Vera's practice is an outpatient program that focuses on teaching patients how to address their pain. (Tr. at 284). Plaintiff was in search of a comprehensive inpatient pain management program that would provide her with lorazepam and Stadol, two of the prescription medications to which she had become addicted. (Tr. at 283-84). Plaintiff ultimately decided that she was not interested in Dr. Vera's practice and decided to look elsewhere. (Tr. at 284).

Over a period of approximately three months in late 1999, Plaintiff sought treatment for her addiction to prescription medications from Dr. Thomas Lucas, M.D., at Charter Haven Behavioral Health System in Desoto, Texas. (Tr. at 492-505). Plaintiff's treatment by Dr. Lucas was partially successful. On December 16, 1999, Dr. Lucas noted that Plaintiff continued to have difficulty with depression and anxiety and that she was experiencing marital difficulties. (Tr. at 496). She was discharged on December 22, 1999, and directed to follow up with outpatient therapy. *Id.* On discharge, her medications consisted of Oxycontin, Lortab, Neurontin, Phenargan, Lorazepam, Soma, and Stadol nasal spray; all of the addictive medications were prescribed at reduced dosages from prior to her admission. (Tr. at 496; *see* Tr. at 283, 286).

On May 9, 2003, Dr. Lucas completed a mental status report at the request of the Texas Rehabilitation Commission. (Tr. at 194-96). Dr. Lucas noted that as of the date of his last examination of Plaintiff, on April 21, 2003, Plaintiff's diagnosis consisted of chronic pain and situational anxiety. (Tr. at 195A). He noted that Plaintiff's mood and affect were expected for her levels of chronic pain and that she was moderately impaired in her ability to relate to others or sustain work. (Tr. at 195-195A). Otherwise, Plaintiff's appearance, content of thought, thought process, memory, attention and concentration, and insight and judgment were all "intact." *Id.*

On June 22, 2003, Plaintiff was taken to Methodist Hospital of Dallas after crashing her car

into a curb while in an altered mental state. (Tr. at 323). The emergency room physician noted that Plaintiff appeared very intoxicated and that her speech was slurred. *Id.* After Plaintiff sobered appropriately, she was diagnosed with polysubstance abuse and discharged that evening. (Tr. at 324-25).

The next day, on June 23, 2003, Dr. Kenneth Wright, M.D., performed a consultative examination at the behest of the Texas Rehabilitation Commission. (Tr. at 148-55). Plaintiff's chief complaints were damaged nerves, hearing problems, and seizures. (Tr. at 148). Dr. Wright noted that Plaintiff's mood was depressed and that she was moderately agitated but alert, oriented, and appropriate. (Tr. at 149). He further noted that although Plaintiff had some difficulties with balance, she was able to get on and off the examination table without difficulty. (Tr. at 150). Plaintiff's lower extremity strength was not tested due to complaints of pain, but Plaintiff arose from the chair without difficulty and was able to stand on her toes and heels. *Id.* Plaintiff exhibited limited flexion-extension and limited lateral flexion of the lumbar spine. (Tr. at 154). She also exhibited limited lateral flexion, flexion-extension, and rotation of the cervical spine. *Id.* Dr. Mitchell's clinical impression of Plaintiff's complaints of damaged nerves was consistent with chronic disc disease and possible sciatica. (Tr. at 150). He noted that Plaintiff exhibited diffuse hyperalgesia (excessive sensitivity to pain) that was probably associated with chronic depression. *Id.* Dr. Mitchell did not specifically test Plaintiff's auditory acuity but noted that she had no difficulty understanding normal conversation tones throughout the examination. (Tr. at 150-51). As for Plaintiff's seizures, Dr. Mitchell stated that her seizures were most certainly due to abrupt withdrawal from valium-like drugs. (Tr. at 151). Although subsequent episodes had never been observed by others, he could not exclude the possibility of seizures. *Id.* An x-ray of Plaintiff's

lumbrosacral spine that same day showed a decrease in L5-S1 disc space but normal disc space otherwise. (Tr. at 152).

On July 23, 2003, Dr. Randal Reid, M.D., a non-examining state agency medical consultant ("SAMC") reviewed Plaintiff's medical records and conducted a physical residual functional capacity ("RFC") assessment. (Tr. at 293-300). Dr. Reid diagnosed Plaintiff with chronic disc disease. He found that Plaintiff could lift 50 pounds occasionally and 25 pounds frequently. (Tr. at 294). He also found that Plaintiff could stand, walk, or both for 6 hours in an 8-hour work day and that she could sit for 6 hours in an 8-hour work day. *Id*. Dr. Reid noted that Plaintiff had decreased disc space in the L5-S1 region and a mildly limited range of motion in the lumbar spine. (Tr. at 295). Plaintiff had no postural, manipulative, visual, communicative, or environmental limitations. (Tr. at 295-98). Dr. Reid also noted that Plaintiff's "alleged limitations far exceed the objective findings and are therefore not considered credible." (Tr. at 298).

Also on July 23, 2003, Dr. Stephanie Judice, M.D., a SAMC, conducted a psychiatric review of Plaintiff's medical records. Dr. Judice determined that Plaintiff suffered from situational anxiety, which was classified under Listing 12.06. (Tr. at 301, 306). However, Dr. Judice determined that this impairment was not severe since it imposed no degree of limitation on Plaintiff's daily activities or ability to function. (Tr. at 301, 311).

The Texas Rehabilitative Commission referred Plaintiff to Dr. Jeffrey Siegel, Ph.D., a forensic and clinical psychologist, for a psychodiagnostic evaluation on June 10, 2004. (Tr. at 405-412). Dr. Siegel described Plaintiff's mood during his evaluation as agitated and depressed; he described her affect as anxious, angry, and consistent with an agitated form of depression. (Tr. at 407). He noted that Plaintiff's concentration and persistence during the evaluation fluctuated and

that her pace was generally slow. (Tr. at 408). Dr. Siegel diagnosed Plaintiff with a major depressive disorder, recurrent, severe without psychotic features; provisional personality disorder; and a global assessment of functioning ("GAF") score of 40. (Tr. 409).

Dr. Siegel also completed a mental medical source statement of Plaintiff's ability to do work-related activities. (Tr. at 410-412). He noted that Plaintiff's depression and agitation impaired her ability to understand, remember, and carry out instructions. (Tr. at 410). Specifically, she had a "marked limitation" in the ability to understand and remember short, simple instructions; carry out short and simple instructions; understand and remember detailed instructions; and make judgments on simple work-related decisions. *Id*. The limitation on her ability to carry out detailed instructions was "extreme." *Id*. Plaintiff's ability to respond appropriately to supervision, co-workers, and work pressures likewise was affected by her depression and agitation. (Tr. at 411). Dr. Siegel classified Plaintiff's limitation on her ability to interact appropriately with the public as "marked"; the limitation on her ability to interact appropriately with supervisors and co-workers was "marked to extreme"; the limitations on her ability to respond appropriately to work pressures and routine changes in a usual setting were "extreme." *Id*. Dr. Siegel did not list substance abuse among Plaintiff's impairments; he therefore did not respond to a question asking him to determine how an impairment from alcohol or substance abuse contributed to Plaintiff's limitations. (*See id*.).

### 3. *Hearing Testimony*

A hearing was held before the ALJ on January 25, 2005. (Tr. at 26). Plaintiff appeared personally and was represented by an attorney. (Tr. at 28). A medical expert ("ME") and vocational expert ("VE") also testified at the hearing. (Tr. at 26).

### a. *Plaintiff's Testimony*

Under examination by her attorney, Plaintiff testified that she was 56 years old on the date of the hearing, that she completed the tenth grade, and that she held a GED. (Tr. at 30). Plaintiff testified that she was divorced and lived alone in an apartment. (Tr. at 31). She said that she was unable to drive herself and had someone bring her to the hearing. *Id.*

Plaintiff testified that she was self-employed as a sales representative from 1982 until she was involved in a motor vehicle accident sometime in 1996. (Tr. at 32-33). She last worked in 1996. (Tr. at 32). The exact nature of her work as a sales representative was never discussed in detail; she apparently sold gift items and antiques from her home and at shows, although she also testified that at one point she had an antique store. (*See* Tr. at 32-33, 37-38). Prior to her accident in 1996, Plaintiff testified that she managed sales representatives, directed the set up of shows, coordinated larger accounts, and acted as a general sales representative. (Tr. at 32). The physical demands of her work varied; at times she had to lift 25 to 30 pounds during the course of the day but she would also go for several months without having to lift anything. (Tr. at 33). Her work day ranged from four to eighteen hours; much of this time was spent sitting down and on the phone. (Tr. at 33-34).

Plaintiff testified that she stopped working after her accident because she "couldn't be in the car alone...they couldn't fix the disk problems I had." (Tr. at 34). She stated that she was in enormous pain and went to a pain clinic for two years. *Id.* Plaintiff said she was able to do very little and could only "help out by calling a few people on the phone and telling them to buy something." (Tr. at 32). Plaintiff testified that it was difficult for her to sit and that she had to get up and move around a lot. (Tr. at 34). Plaintiff said she had pain in all of her back, through her

pelvis, and in both legs. (Tr. at 34-35). Her medication alleviated her pain, although it also caused anxiety and nausea. (Tr. at 35-36).

On a typical day, Plaintiff said she got three to four hours of sleep if she was lucky. (Tr. at 36). She walked around her a apartment a lot. *Id*. Her daughter or someone else shopped for groceries. *Id*. Plaintiff said she did not houseclean but tried to keep her apartment as clean as she possibly could because it was new. (Tr. at 36-37). She received food stamps and had no source of income except a priest who worked with abandoned children. (Tr. at 37).

Plaintiff testified that she had been on some of her pain medications since 1990 and on all of them since 1996. (Tr. at 48).

### b. Medical Expert Testimony

Once Plaintiff completed her testimony, the ALJ heard from Dr. Hellmut Tauber, M.D., who served as the ME for the administrative hearing. (Tr. at 38). The ME testified that the earliest medical records dated from 1999 and that he did not have any basis to form an opinion on what Plaintiff's impairments were as of the date she was last insured in December 1997. (Tr. at 40).

The ME testified that Plaintiff's diagnosis as of March 12, 2003, was chronic pain syndrome, anxiety, depression, degenerative disc disease, back pain, and shoulder pain. (Tr. at 40). The ME said Plaintiff's situation was extremely complicated because of her overuse of prescription medications. (Tr. at 40-41). The ME said that Plaintiff's polysubstance abuse caused a number of difficulties, such as intoxication, falls, drug-induced constipation, motor vehicle accidents, and psychiatric problems. (Tr. at 41). The ME testified that Plaintiff's chronic pain syndrome was complicated by repeatedly overdosing herself and failing to participate in addiction therapy, such as narcotics anonymous and alcoholics anonymous. *Id*. The ME also testified that without the

superimposed drug addiction, he believed that Plaintiff could perform light work and that she had a good range of intelligence.  (Tr. at 42).

The ME testified that when Plaintiff abused substances, her depressive disorder met or equaled Listing 12.04.  (Tr. at 42-43).  Plaintiff's mental disorder also aligned with several elements of Listing 12.08.  (Tr. at 44).  The ME testified that when Plaintiff overused pain medication, the degree of restriction on her daily activities was marked.  (Tr. at 45).  When not overusing pain medication, the restrictions on daily activities, social functioning, and concentration were all mild. *Id*.  Her judgment and ability to deal with work stresses were moderately limited.  (Tr. at 46).  Her ability to understand, remember, and carry out complex job instructions was mildly limited, as was her ability to maintain her personal appearance.  (Tr. at 47).

Under examination by Plaintiff's attorney, the ME testified that he believed Plaintiff would be able to function without her medications because her background and medical records show that she previously functioned at a superior level, and that she participated fully in group therapy at Charter Haven in October of 1999.  (Tr. at 48-49).

### c. *Vocational Expert Testimony*

The ALJ next heard testimony from Ms. Susan Brooks, the VE for the administrative hearing.  Ms. Brooks testified that Plaintiff's past work operating a gift and antique store and work as a sales representative could both be classified as a gift shop clerk, which is listed in the Dictionary of Occupational Titles ("DOT") as code 260.357-026.  (Tr. at 53).  Work as a gift shop clerk is classified as light, semiskilled, and has a specific vocational preparation ("SVP") of 4.  *Id*.  In her position as a gift shop clerk, the VE testified that Plaintiff acquired the transferrable skills of sale knowledge and machinery.  *Id*.

The ALJ then asked the VE to assume that the claimant could perform light work, which was defined as lift or carry (or both) 20 pounds occasionally and 10 pounds frequently, but that she had a moderately limited ability to use judgment and deal with work stresses, to behave in an emotionally stable manner, to relate predictably in work situations, and to further assume that claimant had a mildly limited ability to understand, remember, and carry out complex job instructions and to maintain personal appearance. *Id*. The ALJ asked whether Plaintiff could perform her past work as a gift shop clerk, and the VE said that she could. *Id*.

Under examination by Plaintiff's attorney, the VE testified that if Plaintiff were to work for someone else, the absentee tolerance was typically two days per month. (Tr. at 54).

## C. ALJ's Findings

The ALJ denied Plaintiff's application for benefits by written opinion issued on April 21, 2005. (Tr. at 10-24). The ALJ found that Plaintiff met the insured status requirements of section 223(c) of the Social Security Act on August 15, 1996, the date of her alleged disability; she continued to meet the insured status requirements through December 31, 1997, but not thereafter. (Tr. at 22, ¶¶1,2). The ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset of disability, August 15, 1996. (Tr. at 22, ¶3).

The ALJ noted that Plaintiff had a complex medical history with numerous surgeries. (Tr. 15). He found that as of December 31, 1997, Plaintiff suffered from menopause, tension headaches, and a bladder infection, but that these ailments did not constitute an impairment or combination of impairments which affected her ability to perform work-related activities. (Tr. at 23, ¶¶4,5). Consequently, the ALJ found that Plaintiff was not eligible for Disability Insurance Benefits as of December 31, 1997, the last day on which she was insured. (Tr. at 23, ¶6).

The ALJ found that as of March 12, 2003, Plaintiff's severe impairments consisted of degenerative disc disease, depressive disorder, personality disorder, somatoform disorder, and substance abuse disorder. (Tr. at 23,¶¶7,8). The ALJ further found that when Plaintiff abused substances that affected the central nervous system, she was disabled because her depressive disorder met the requirements of Listing 12.04, her personality disorder met the requirements of Listing 12.06, and her somatoform disorder met the requirements of Listing 12.07. (Tr. at 23, ¶9, 10). However, he also found that Plaintiff's substance abuse addiction was material to the finding of disability; when she was not abusing substances that affected the central nervous system, her mental disorders did not meet or equal any of the listings. (Tr. at 23, ¶¶10,11). The ALJ further found that Plaintiff's degenerative disc disease did not meet or equal the requirements of Listing 12.04. (Tr. at 23, ¶12).

The ALJ found that Plaintiff had the following residual functional capacity ("RFC") to lift or carry (or both) 20 pounds occasionally and 10 pounds frequently; stand or walk (or both) for a total of 6 hours in an 8-hour work day; sit for a total of 6 hours in an 8-hour work day; with moderate limitations use judgment, deal with work stresses, behave in an emotionally stable manner, and relate predictably in social situations; and with mild limitations to understand, remember, and carry out complex job instructions and maintain personal appearance. (Tr. at 24, ¶14). The ALJ found that Plaintiff had the RFC to perform less than the full range of light work. *Id*. The ALJ further found that Plaintiff could perform her past relevant work as a gift shop clerk, a light, semi-skilled position. (Tr. at 24, ¶¶16, 17). As a result, the ALJ found that Plaintiff was not disabled as defined by the Social Security Act and thus not entitled to Supplemental Security Income. (Tr. at 24, ¶18).

# II. ANALYSIS

## A. Legal Standards

### *1. Standard of Review*

Judicial review of the Commissioner's denial of benefits is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); 42 U.S.C. § 405(g), 1383(C)(3). Substantial evidence is defined as more than a scintilla, less than a preponderance, and as being such relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). In applying the substantial evidence standard, the reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236. A finding of no substantial evidence is appropriate only if there is a conspicuous absence of credible evidentiary choices or contrary medical findings to support the Commissioner's decision. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988).

The scope of judicial review of a decision under the supplemental security income program is identical to that of a decision under the social security disability program. *Davis v. Heckler*, 759 F.2d 432, 435 (5th Cir. 1985). Moreover, the relevant law and regulations governing the determination of disability under a claim for disability insurance benefits are identical to those governing the determination under a claim for supplemental security income. *See id.* Thus, the Court may rely on decisions in both areas without distinction in reviewing an ALJ's decision. *See id.*

## 2. *Disability Determination*

To be entitled to social security benefits, a claimant must prove that he or she is disabled as defined by the Social Security Act. *Leggett*, 67 F.3d at 563–64; *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988). The definition of disability under the Social Security Act is "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

The Commissioner utilizes a sequential five-step analysis to determine whether a claimant is disabled:

1. An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings.

2. An individual who does not have a "severe impairment" will not be found to be disabled.

3. An individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors.

4. If an individual is capable of performing the work he has done in the past, a finding of "not disabled" must be made.

5. If an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if work can be performed.

*Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (summarizing 20 C.F.R. § 404.1520(b)-(f)). Under the first four steps of the analysis, the burden lies with the claimant to prove disability. *Leggett*, 67 F.3d at 564. The analysis terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled. *Id*. Once the claimant satisfies

his or her burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant is capable of performing. *Greenspan*, 38 F.3d at 236. This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations or by expert vocational testimony or other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987). A finding that a claimant is not disabled at any point in the five-step review is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

## B. Issues for Review

Plaintiff presents the following issues for review:

(1)     The ALJ failed to apply the appropriate legal standard established by the Fifth Circuit Court of Appeals in finding Ms. McNair's back impairment "not severe" before the expiration of her insured status.

(2)     The ALJ failed to apply the appropriate legal standard in finding that Ms. McNair can perform her past relevant work.

(a)     The evidence of record does not establish the mental demands of Ms. McNair's past work.

(b)     The ALJ made no finding of fact as to the mental demands of Ms. McNair's past work.

(Pl. Br. at 1).

## C. Issue One: Back Impairment

Plaintiff first contends that the ALJ failed to apply the appropriate legal standard when he determined Plaintiff's severe impairments at Step 2 of the sequential five-step analysis used to determine claimant's eligibility for Disability Insurance Benefits. (Pl. Br. at 9). In the instant case, the ALJ found that Plaintiff suffered from menopause, tension headaches, and a bladder infection as of December 31, 1997, but that these ailments did not constitute impairments which affected her

physical ability to perform work-related activities.  (Tr. at 23, ¶¶4,5).  Plaintiff contends that by omission, the ALJ held that her back impairment was "not severe" during her insured status.  (Pl. Br. at 10).  Plaintiff further contends that had the ALJ used the proper legal standard for the determination of severity at Step 2, he would have included her back impairment as a "severe" impairment.  (Pl. Br. at 10-11).

Pursuant to the Commissioner's regulations, a severe impairment is "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  20 C.F.R. § 404.1520(c).  The Fifth Circuit has held that a literal application of this regulation would be inconsistent with the Social Security Act because the regulation includes fewer conditions than indicated by the statute.  *Stone v. Heckler*, 752 F.2d 1099, 1104-05 (5th Cir. 1985).  Accordingly, in the Fifth Circuit, an impairment is not severe "only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work."  *Id.* at 1101.  Additionally, the determination of severity may not be "made without regard to the individual's ability to perform substantial gainful activity."  *Id.* at 1104.  To ensure that the regulatory standard for severity does not limit a claimant's rights, the Fifth Circuit held in *Stone* that it would assume that the "ALJ and Appeals Council have applied an incorrect standard to the severity requirement unless the correct standard is set forth by reference to this opinion or another of the same effect, or by an express statement that the construction we give to 20 C.F.R. § 404.1520(c) (1984) is used."  *Id.* at 1106; *accord Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000); *Eisenbach v. Apfel*, 2001 WL 1041806, at *6 (N.D. Tex. Aug. 29, 2001) (Boyle, J.).  Notwithstanding this presumption, the Court must look beyond the use of "magic words" and determine whether the ALJ applied the correct severity standard.  *Hampton v.*

*Bowen*, 785 F.2d 1308, 1311 (5th Cir. 1986). Unless the correct standard of severity is used, the claim must be remanded to the Secretary for reconsideration. *Stone*, 752 F.2d at 1106.

When the ALJ evaluated Plaintiff's claim for Disability Insurance Benefits, he did not cite, reference, or expressly state either the Fifth Circuit's construction of 20 C.F.R. § 404.1520(c) or *Stone* in his narrative discussion or in his findings when he assessed Plaintiff's impairments at Step 2. (Tr. at 20; Tr. at 23, ¶¶5,6). Rather than apply *Stone* or 20 C.F.R. § 404.1520(c), the ALJ assessed the severity of Plaintiff's impairments according to how they "affected her physical ability to perform work-related activities as of December 31, 1997." (Tr. at 20; Tr. at 23, ¶¶5,6). The ALJ's use of "affected" is a lesser degree of severity than the literal application of the "significantly limits" language contained in the Social Security regulations. *See* 20 C.F.R. § 404.1520(c). However, because "affected" is not modified by "slightly," "greatly," or any other adjective, the degree to which an impairment "affected" Plaintiff's ability to do work is unknown. The Court therefore presumes that the ALJ did not apply the correct standard to the determination of severity because the standard used by the ALJ is more than the "slight abnormality having such minimal effect" language used in the Fifth Circuit to assess severity at Step 2. *See Stone* 752 F.2d at 1101, 1106; *Hampton*, 785 F.2d at 1311.

The ALJ also assessed the severity of Plaintiff's impairments without regard to her ability to perform substantial gainful activity during her insured period. *Eisenbach*, 2001 WL 1041806, at *6 (citing *Stone*, 752 F.2d at 1104). The ALJ did make a finding at Step 4 that Plaintiff could perform her past relevant work. (Tr. at 24, ¶17). This determination, however, was based on her capabilities at the time of the January 25, 2005 administrative hearing in regard to her March 12, 2003 claim for Supplemental Security Income. (Tr. at 18-19; Tr. at ¶¶14,17). The ALJ never

considered Plaintiff's ability to perform substantial gainful activity between and August 15, 1996, and December 31, 1997, the period relevant to Plaintiff's distinct claim for Disability Insurance Benefits. (*See* Tr. at 20; *see* Tr. at 23, ¶6). The Court cannot speculate that because Plaintiff could perform her past relevant work at the time of the January 25, 2005 administrative hearing, she could also perform her past relevant work prior to the expiration of her insured status on December 31, 1997 for purposes of her claim for Disability Insurance Benefits; it can only scrutinize the record for substantial evidence and determine whether the Commissioner applied proper legal standards. *Greenspan*, 38 F.3d at 236.

For the foregoing reasons, the Court finds that the ALJ failed to properly apply the *Stone* standard at Step 2 of his analysis of Plaintiff's severe impairments as they related to her claim for Disability Insurance Benefits. *Stone*, 752 F.2d at 1106; *Hampton*, 785 F.2d at 1311. Generally, appeals from administrative agencies of a procedural error will not lead to a vacated judgment "unless the substantial rights of a party have been affected." *Anderson v. Sullivan*, 887 F.2d 630, 634 (5th Cir. 1989) (citing *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) (per curiam)). However, the ALJ's failure to apply the *Stone* standard was a legal error, not a procedural error. The Fifth Circuit left the lower courts no discretion to determine whether such an error was harmless.[6]

_____

[6]Defendant contends that Plaintiff's back impairment was not severe for purposes of Step 2 because the alleged back impairment did not occur on or before December 31, 1997, the date her insured status expired. (*See* Def. Br. at 5) (citing 20 C.F.R. §§ 404.131(a) and (b), 404.315, 404.320). Notwithstanding the fact that the ALJ committed a legal error and that the Court has no discretion in this instance to determine whether the error was harmless, the medical record does not support Defendant's argument. Tr. at 385 (Dr. Mitchell's August 1996 diagnosis of chronic low back pain and lumbar disc syndrome resulting from a 1993 car accident); Tr. at 187-90 (Dr. Newman's pre-1997 prescriptions to treat chronic pain and steroid injections to Plaintiff's left and right hips); Tr. at 283 (Dr. Vera's reference to Plaintiff's long-standing complaints of back pain and a slipped disc). Defendant further contends that Plaintiff's back impairment entered the medical record in March 2000, when an MRI showed mild degenerative changes to the cervical spine. (Def. Br. at 8-9) (citing Tr. at 259-60). However, Plaintiff did not raise a point of error pertaining to her neck; rather, the point of error relates to the ALJ's consideration of her low back impairment. (Pl. Reply at 6).

Rather, the court mandated that "[u]nless the correct standard is used, the claim *must* be remanded to the Secretary for reconsideration." *Stone*, 752 F.2d at 1106 (emphasis added); *Eisenbach*, 2001 WL 1041806, at *6-7 (remanding the case because the ALJ (1) did not cite or reference *Stone* and (2) determined claimant's current capabilities, not his capabilities during the relevant time period).

### D. Issue Two: Past Relevant Work

Plaintiff's second issue for review is that the ALJ failed to apply the appropriate legal standard when he found that Plaintiff could perform her past relevant work and thus was not entitled to Supplemental Security Income. (Pl. Br. at 1; Pl. Reply at 11-12). Specifically, Plaintiff contends that (1) the evidence of record does not establish the mental demands of Plaintiff's past work and (2) the ALJ made no finding of fact as to the mental demands of Plaintiff's past work. (Pl. Br. at 1).

It is the claimant's burden at Step 4 to establish that she cannot perform her past relevant work. *See Leggett*, 67 F.3d at 564. Nevertheless, Social Security Ruling ("SSR") 82-62 requires that where the ALJ has determined that a claimant retains the RFC to perform a past relevant job, the decision must contain the following specific findings: (1) a finding of fact as to the individual's RFC; (2) a finding of fact as to the physical and mental demands of the past job or occupation; and (3) a finding of fact that the individual's RFC would permit a return to his or her past job or occupation. *Social Security Ruling: Program Policy Statement Titles II and XVI: A Disability Claimant's Capacity To Do Past Relevant Work, In General*, SSR 82-62, 1982 WL 31386, at *4 (S.S.A. Nov. 30, 1981). When determining whether or not a claimant retains the RFC to perform her past relevant work, the ALJ can look to either (1) the job duties peculiar to an individual job as the claimant actually performed it or (2) the functional demands and job duties of the occupation as

generally required by employees throughout the national economy. *Social Security Ruling: Program Policy Statement Titles II and XVI: Past Relevant Work - The Particular Job or The Occupation As Generally Performed*, SSR 82-61, 1982 WL 31387, at *1-2 (S.S.A. Nov. 30, 1981).

### 1. SSR 82-62

Plaintiff's point of error rests upon the ALJ's failure to follow SSR 82-62. (Pl. Br. at 12-21). While she subdivides her argument into a lack of evidence and the failure to make a finding of fact, the issues raised by each of these arguments are answered by the ALJ's treatment of the VE's testimony at the administrative hearing. The VE testified that Plaintiff's past work as a sales representative and gift and antique store operator could both be classified under the code for a gift shop clerk.[7] (Tr. at 53). The ALJ then posed a hypothetical question which incorporated several restrictions on Plaintiff's mental ability. *Id*. Based on the VE's answer that Plaintiff could perform her past relevant work as a gift shop clerk, *id*., the ALJ wrote in his decision that:

> [T]he occupation of gift shop clerk *can be performed by an individual*...with a moderately limited ability to use judgment, to deal with work stresses, to behave in an emotionally stable manner, and to relate predictably in social situations, and a mildly limited ability to understand, remember, and carry out complex job instructions, and to maintain personal appearance.

(Tr. at 22) (emphasis added). The VE's testimony provides evidence of the mental demands of Plaintiff's past relevant work. *See* SSR 82-62, 1982 WL 31386, at *3. The above quotation from the ALJ's decision shows that the ALJ considered the mental demands of Plaintiff's past occupation. Although the ALJ did not make an explicit finding of fact as to the mental demands of Plaintiff's

---

[7]The VE testified that the position of "gift shop clerk" was classified under DOT code 260.357-026. (Tr. at 53). This code corresponds to the position of "salesperson, flowers." Social Security Ruling 82-41 recognizes that an individual's particular job may not be identifiable in authoritative reference materials like the DOT. 1982 WL 31389, at *4 (S.S.A. Nov. 30, 1981). Moreover, Plaintiff does not contest the VE's characterization of her past work as corresponding to DOT code 260.357-026. *See* Pl. Br. at 16.

past relevant work, (*see* Tr. at 24, ¶¶15,16,17), the narrative discussion complied with the second finding required by SSR 82-62. *See* 1982 WL 31386, at *4.

Plaintiff cites to several cases in support of her argument that the ALJ failed to provide evidence and failed to make a specific finding regarding the mental demands of a gift shop clerk. (Pl. Br. at 17-21; Pl. Reply at 8-16) (citing *Hines v. Barnhart*, 2003 WL 23323615 (N.D. Tex. June 5, 2003), *Winfrey v. Chater*, 92 F.3d 1017 (10th Cir. 1996), *Armstrong v. Sullivan*, 814 F.Supp. 1364 (W.D. Tex. 1993)). Each of these cases is distinguishable from the ALJ's consideration of Plaintiff's claim. *Hines* found that generic descriptions such as "sedentary" and "unskilled" were insufficient to describe the requirements of past relevant work. 2003 WL 23323615, at *8. *Hines* is distinguishable because in the instant case, the ALJ considered the specific mental requirements of a gift shop clerk. (Tr. at 22). For example, the ALJ found that someone with a moderately limited ability to use judgment could work as a gift shop clerk. *Id*. *Armstrong* found no evidence in the record of the mental demands of the claimant's past relevant work. 814 F.Supp. at 1373. In the instant case, the VE's testimony provided evidence of the mental demands of a gift shop clerk. (Tr. at 22, 53). *Winfrey* is distinguishable because the ALJ did not make a specific finding of fact regarding the mental demands of past work. 92 F.3d at 1025. As discussed in the preceding paragraph, although the ALJ in the instant case did not make a specific finding of fact, he addressed the issue of the mental demands of a gift shop clerk in his narrative discussion. (Tr. at 22).

While an explicit finding of fact on the mental demands of a gift shop clerk would have been preferable, the Court finds that the ALJ's failure to do so was a procedural error because the VE provided evidence of the mental demands of a gift shop clerk, and the ALJ's narrative discussion considered the issue. The Court therefore finds that the ALJ applied the appropriate legal standard

in finding that Plaintiff retained the mental RFC to perform her past relevant work. *Greenspan*, 38 F.3d at 236.

### 2. *Prejudice*

The Fifth Circuit has held that "[p]rocedural perfection in administrative proceedings is not required" and a court "will not vacate a judgment unless the substantial rights of a party are affected." *Mays*, 837 F.2d at 1364. Procedural errors in the disability determination process are considered prejudicial when they cast doubt onto the existence of substantial evidence in support of the ALJ's decision.[8] *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988). The question for the Court, therefore, is whether substantial evidence supports the ALJ's determination that Plaintiff retained the mental RFC to perform her past relevant work.

The administrative record contains a number of mental status evaluations by various medical doctors of Plaintiff's mental condition. On May 9, 2003, Dr. Lucas noted that Plaintiff's mood and affect were expected for her levels of chronic pain and that she was moderately impaired in her ability to relate to others or sustain work. (Tr. at 195-195A). Apart from these notations, Dr. Lucas found Plaintiff's appearance, content of thought, thought process, memory, attention and concentration, and insight and judgment to be "intact." *Id*. Dr. Judice determined that Plaintiff's situational anxiety was not severe because it imposed no degree of limitation on Plaintiff's daily activities or ability to function. (Tr. at 301, 311). However, the ALJ discounted the weight of Dr. Judice's opinion because she was a non-examining, non-treating psychiatrist. (Tr. at 21). On June 10, 2004, Dr. Siegel determined that Plaintiff had a "marked" or "extreme" limitations in her ability

---

[8]When a claimant alleges the inadequate development of the record, he must show prejudice resulting from lack of substantial evidence and that adequate development of the record could have changed the result. *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996). Although Plaintiff alleges inadequate development of the record, (Pl. Reply at 7), the Court finds that substantial evidence supported the ALJ's Step 4 determination. (Part II.D.2, *infra*).

to do work-related activities. (Tr. at 410-12). However, he did not list substance abuse among Plaintiff's impairments, an impairment that is not in doubt in this case. (*See* Pl. Br. at 4; *see* Tr. at 23, ¶10). Dr. Siegel therefore did not assess the impact of Plaintiff's substance addiction on her mental disorders, which the ALJ determined to be materially affected by her addiction. (Tr. at 23, ¶10). The ALJ gave considerable weight to the testimony of Dr. Tauber, the ME who testified at the administrative hearing. (Tr. at 21). Dr. Tauber testified that when Plaintiff did not abuse pain medication, the restrictions on her daily activities, social functioning, and concentration were all mild; her judgment and ability to deal with work stresses were moderately limited; and her ability to understand, remember, and carry out complex job instructions was mildly limited, as was her ability to maintain her personal appearance. (Tr. at 45-47). Based on the medical records and testimony regarding Plaintiff's mental condition, the ALJ determined that Plaintiff retained the mental RFC to perform her past relevant work as a gift shop clerk. Although some of the mental status evaluations, particularly Dr. Siegel's, conflicted with others, conflicts in the evidence are for the ALJ to resolve, not the Court. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990) (citing *Patton v. Schweiker*, 697 F.2d 590, 592 (5th Cir. 1983)). The Court therefore finds that substantial evidence supports the ALJ's determination that Plaintiff retained the mental RFC to perform her past relevant work. *Leggett*, 67 F.3d at 564.

Plaintiff contends that the existence of substantial evidence in the record does not make a procedural error harmless. (Pl. Reply at 14) (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546 (6th Cir. 2004). *Wilson*, however, involved a finding of error in the ALJ's failure to give good reasons for not giving weight to a treating physician as required by 20 C.F.R. § 404.1527(d)(2). 378 F.3d at 544; *cf.* Part II.D.1, *supra* (finding error in violation of SSR 82-62). "Violation of a

regulation constitutes error, and will constitute a basis for reversal of agency action and remand when a reviewing court concludes that the error is not harmless. *Pearson v. Barnhart*, 2005 WL 1397049, at *4 (E.D. Tex. May 23, 2005) (citing *Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003)). A violation of a ruling, on the other hand, "may also constitute error warranting reversal and remand when an aggrieved claimant shows prejudice resulting from the violation." *Id.* (citing *Newton v. Apfel*, 209 F.3d 448, 458 (5th Cir. 2000). Prejudice and harmless error analysis, although similar in substance, are different procedurally. *Bornette v. Barnhart*, 466 F.Supp.2d 811, 816 (E.D. Tex. 2006). Remand for failure to comply with a ruling, as in this case, is appropriate only when a complainant affirmatively demonstrates ensuant prejudice. *Hall v. Schweiker*, 660 F.2d 116, 119 (5th Cir.1981). A claimant establishes prejudice by showing that adherence to the ruling might have led to a different decision. *Newton*, 209 F.3d at 458 (citing *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir.1995)). Harmless error exists when it is inconceivable that a different administrative conclusion would have been reached absent the error. *Bornette*, 466 F.Supp.2d at 816 (citing *Frank*, 326 F.3d at 622).

Plaintiff contends that the ALJ's Step 4 finding prejudiced Plaintiff because had the sequential evaluation process reached Step 5, the Medical-Vocational Guideline for an individual with Plaintiff's age, educational background, and skill set would have directed a finding of "disabled." (Pl. Reply at 14) (citing 20 C.F.R. Pt. 404, Subpt. P, App. 2, Table No. 2, Ruling 201.06).[9] However, Plaintiff must show prejudice *at Step 4* to warrant remand for the ALJ's

---

[9] The language of Plaintiff's reply incorporates both harmless error and prejudice. (*See* Pl. Reply at 14-15). As discussed in the preceding paragraph, prejudice is the proper framework.

procedural error.[10]  *See Newton*, 209 F.3d at 458.  Plaintiff has failed to show how adherence to SSR

82-62 might have led to a different decision at Step 4 and thus has not affirmatively demonstrated

prejudice.  *Id.*; *see Medina v. Barnhart*, 2005 WL 2708789, at *9 (W.D. Tex. Oct. 19, 2005) (failure

to discuss mental demands of past work did not prejudice claimant and did not require reversal

because substantial evidence showed that claimant did not suffer from his alleged mental

impairments nor did the alleged impairments restrict his ability to work).  Moreover, as discussed

earlier in this section, substantial evidence supports the ALJ's finding that Plaintiff retained the

mental RFC to perform her past relevant work.  Remand is therefore not appropriate for Plaintiff's

claim for Supplemental Security Income.  *Hall*, 660 F.2d at 119.

### III.    RECOMMENDATION

For the foregoing reasons, the Court recommends that Plaintiff's *Motion for Summary*

*Judgment* be **GRANTED** and that *Commissioner's Motion for Summary Judgment* be **DENIED**.

The Court recommends that the *Commissioner's Motion for Summary Judgment* be

**REVERSED** and the case be **REMANDED** for reconsideration of Plaintiff's claim for Disability

Insurance Benefits.  On remand the ALJ must, as a part of his Step 2 analysis of Plaintiff's claim for

Disability Insurance Benefits, determine whether Plaintiff's back pain was a severe impairment

according to the legal standard established in *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985).  He

must also assess Plaintiff's ability to perform substantial gainful activity between and August 15,

---

[10]The substance of Plaintiff's argument also fails because it is based upon an erroneous paraphrase of the VE's testimony regarding Plaintiff's transferable skills.  (*See* Pl. Reply at 14, n. 2) (stating that the VE testified Plaintiff "acquired" skills in her past work).  At the administrative hearing, the ALJ asked, "[d]id the claimant acquire any skills, any transferrable skills as a gift shop clerk?" to which the VE responded, "[t]here would be some sale knowledge and, and some machinery.  (Tr. at 53).  While the ALJ did not include an explicit finding of Plaintiff's transferrable skills, the text of his decision notes that Plaintiff "acquired transferrable skills as a gift shop clerk."  (Tr. at 22).  Because Plaintiff possesses transferrable skills, Ruling 201.07, and not Ruling 201.06, applies.  Ruling 201.07 directs a finding of "not disabled."  (20 C.F.R. Pt. 404, Subpt. P, App. 2, Table No. 2, Ruling 201.07).

1996, and December 31, 1997.

The Court recommends that the *Commissioner's Motion for Summary Judgment* be

**AFFIRMED** on Plaintiff's claim for Supplemental Security Income.

**SO RECOMMENDED**, on this 20th day of September, 2007.


IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE


## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions and recommendation must file and serve written objections within ten (10) days after being served with a copy. A party filing objections must specifically identify those findings, conclusions or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory or general objections. A party's failure to file such written objections to these proposed findings, conclusions and recommendation shall bar that party from a *de novo* determination by the District Court. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985)*; Perales v. Casillas*, 950 F.2d 1066, 1070 (5th Cir. 1992). Additionally, any failure to file written objections to the proposed findings, conclusions and recommendation within ten (10) days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).


IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE